Filed 1/25/24  P. v. Lopez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G061155 |
|      v. | Super. Ct. No. 15HF1355 |
| GERARDO REYES LOPEZ, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Patrick H. Donahue, Judge.  Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

After a jury found Gerardo Reyes Lopez guilty on four counts of sexual intercourse with a child 10 years old or younger and seven counts of committing a lewd act on a child under the age of 14, the trial court sentenced him to a total of 100 years to life in prison. Lopez appealed, contending the trial court prejudicially erred in admitting expert testimony about child sexual abuse accommodation syndrome (CSAAS) and instructing the jury it could use charged offenses to prove other charged offenses. Appellant also raises numerous sentencing issues, including arguing that his lengthy sentence was cruel and unusual punishment, and that the trial court erred in imposing an upper term sentence on one of the counts. We conclude there was no evidentiary or instructional error; appellant's sentence was neither cruel nor unusual; and the sentencing error was harmless. Appellant requests this court independently review the trial court's handing of his *Pitchess*[1] motion. After independently reviewing the sealed transcript of the court's in camera proceedings, we find no error. Finally, appellant requested we correct the abstract of judgment to reflect the entire determinate sentence would be served concurrent with the indeterminate sentence. We conclude the abstracts of judgment properly and correctly reflected the oral pronouncement of sentence. Accordingly, we affirm the judgment in its entirety.

**FACTS**

I.      *Charging Document*

On September 13, 2021, the Orange County District Attorney filed a second amended information charging appellant with four counts of sexual intercourse or sodomy with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (a); counts 1-4)[2] and seven counts of committing lewd or lascivious acts upon a child under the age of

_____

[1]      *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]      All further statutory citations shall be to the Penal Code, unless otherwise stated.

2

14 years (§ 288, subd. (a); counts 5-11).  As to counts five through 11, it was alleged that appellant had substantial sexual conduct with a child under 14 years of age (§ 1203.066, subd. (a)(8)).

The information also charged the victim's mother with the same crimes. Before appellant's trial, the mother pleaded guilty to certain crimes and was sentenced to prison for 15 years.

II.     *Trial Evidence*

A.     *Prosecution case*

1.     *Peace Officer Testimony*

On the afternoon of November 6, 2015, Orange County Sheriff Deputy Ernest Ragadio and his partner responded to a report of a suspicious vehicle parked in a cul-de-sac. Because the vehicle's windows were tinted, Ragadio could only see the silhouettes of the occupants.  He knocked on the rear passenger's door and announced he was a sheriff, but no one responded.  He continued knocking for about a minute until appellant opened the front driver's door.  Ragadio observed appellant sweating heavily and his pants were down toward his thighs, exposing his underwear and a semi-erect penis.  After ordering appellant to exit the vehicle, Ragadio peered inside and saw the victim, a young female Hispanic child, sitting in the back seat.

Ragadio conducted a brief recorded interview of appellant with the assistance of a Spanish interpreter.  During the interview, appellant stated he was 29 and the victim, who was his daughter, would turn 13 in December. The victim's mother and younger brother were at the nearby park.  Appellant explained that his pants were lowered and it had taken took him so long to open the vehicle's door because he was in the rear seat cleaning some chemicals that had gotten on his pants at work and had to move to the front seat.  He denied doing anything to his daughter.

3

Ragadio then spoke to the victim, who appeared nervous. When Ragadio asked her about a piece of clothing on the floorboard next to her that looked like underwear, the victim looked down and appeared to cry.

Ragadio also conducted a recorded interview with the victim's mother at the scene. She was calm and cooperative. She did not appear surprised or shocked when he asked questions about appellant's possible sexual involvement with her daughter.

Orange County sheriff investigators Carol Almaguer and Jasper conducted a second recorded interview of appellant. During this interview, appellant was advised of his *Miranda*[3] rights and stated he understood them. Appellant told the peace officers he was in a relationship with the victim's mother, who had another partner. He has known the victim since she was a little girl, and her mother said he was the father. The victim does not get along with her mother's husband. When the victim needed anything, such as shoes or school supplies, she would ask appellant and he would buy it for her.

Investigator Jasper told appellant the victim had informed him she and appellant had sex and that appellant forced her. Appellant responded that it was a lie and he had messages the victim sent him. Appellant stated he had a relationship with the victim's mother. When he and the victim's mother had sex, "all of her kids look." Appellant stated the victim became curious about sex. Mother told him the victim was watching pornographic videos. The victim also began masturbating in front of him. She would also sit on top of him and move her body.

Asked whether he had sex with the victim, appellant responded that they had engaged in oral sex two or three times "a month" or "two weeks before." He acknowledged he was performing oral sex on the victim in the vehicle before he was arrested. After further questioning, appellant stated he and the victim engaged in mutual oral sex three times within the last four months. The first time was at her house, the

---

3        *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

second time was in his car which was parked outside her house, and the third time was that day. Appellant denied engaging in penetrative sex with the victim. However, he admitted he had rubbed his penis between the victim's labia.

2. *Victim Testimony*

The victim, who was 18 years old at the time of trial, testified she has known appellant, who was her mother's friend, since she was seven. When appellant had sex with her mother in the backseat of his car, he often would tell the victim to sit on the nearby floorboard and watch. If she did not comply, he would pull or yank her hair. Her mother told the victim and her siblings not to tell their father about what was going on between appellant and her. The victim complied because she did not want their father to leave.

Appellant began to sexually touch the victim while having sex with her mother. When she was eight, appellant had vaginal sex with her in the backseat of his car. They had sexual intercourse at least two times when she was eight, and about twice a week thereafter, until appellant was arrested. She never wanted appellant to touch her body or have sex with her. Appellant told her not to tell anyone because no one would believe her and her family would fall apart. He also stated if it were not her, it would be her sister, who was six years younger.

The victim was shown two videos found on appellant's iPhone depicting sexual intercourse between a male and female. One of the videos was created on October 24, 2015. The second video was created on November 2, 2015. She identified herself and appellant as the individuals in the videos.

3. *Expert Testimony*

Dr. Jody Ward, a clinical and forensic psychologist, testified about child sexual abuse accommodation syndrome (CSAAS), which is "a pattern of behaviors that many children exhibit who have been sexually abused." CSAAS has five stages or components: secrecy, helplessness, entrapment and accommodation, delayed

5

unconvincing disclosure, and retractions or recantation. Secrecy and helplessness will always be present when a child has been sexually abused, but the remaining components may not be present in a particular case. CSAAS is a treatment tool to understand people who have been abused. It is not used to determine whether a person is telling the truth about being sexually abused because people who exhibit these behavioral patterns may not have been abused. Ward has no knowledge of the facts of this case.

Ward also provided some background information on CSAAS. She explained it was developed in 1983 by Dr. Roland Summit, who had hundreds of clients who had been sexually abused and "he observed this pattern of behaviors that the children would exhibit to cope with ongoing sexual abuse in their lives." Dr. Summit wrote the CSAAS article in 1983. "[T]he original article was based on girls who had been molested by fathers or father figures. . . . [¶] Since then, [CSAAS] has been expanded to include any kind of ongoing child sexual abuse. . . ."

B. *Defense Case*

The sole witness for the defense was Dr. Bradley McAuliff, a professor of psychology, who testified as an expert on children suggestibility and forensic interviewing. Suggestibility occurs when a person's "core memory . . . has been contaminated in some way." Factors that affect suggestibility include asking leading or suggestive questions, nonverbal behavior by the interviewer, the passage of time, the context of the allegations, and the witness's age. Generally, the younger the witness, the more susceptible the witness is to suggestibility. McAuliff has no knowledge of the facts of this case.

During closing argument, defense counsel conceded that "as to count[s] 7 through 11, there is overwhelming evidence. Those are not contested." These counts covered the incidents that were depicted in the two videos found on appellant's cell phone or to which he confessed.

6

C.  *Jury Verdict and Sentencing*

A jury found appellant guilty as charged.

On counts 1 through 4, the trial court sentenced appellant to consecutive terms of 25 years to life on each count, for a total indeterminate sentence of 100 years to life in prison. The court imposed consecutive rather than concurrent terms because "the crimes occurred repeatedly from the time the victim . . . was eight years old until she reached her 11th birthday." Additionally, as an aggravating factor, the victim "was particularly vulnerable, [which] outweighs any other factor." "It was evident from the trial that the defendant acted with the consent of the victim's mother. This girl had no protection whatsoever and was particularly vulnerable."

On count 5, after finding the victim was particularly vulnerable, the trial court sentenced appellant to the upper term of eight years. On counts 6 through 11, it sentenced appellant to one-third the middle term, or two years, on each count for a total determinate sentence of 20 years. The court ordered the determinate sentence to run concurrent to appellant's indeterminate sentence.

Appellant timely appealed.

## DISCUSSION

I.  Pitchess *Motion*

In *Pitchess*, our Supreme Court held a defendant has a right to discovery of the personnel records of peace officers to ensure "a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess, supra*, 11 Cal.3d at p. 535.) Here, appellant made a *Pitchess* motion with respect to Ragadio, Almaguer, Jasper, and other deputies and investigators who participated in his arrest and interviews. The trial court found good cause to conduct an in camera review of their personnel records. After conducting that review, the court ordered disclosure of certain items subject to a protective order. Appellant asked that we independently review the trial court's handling of his *Pitchess* motion to determine whether the court's process

7

complied with the law or whether the court abused its discretion in ordering the disclosure of only certain records. Respondent does not object.

Our Supreme Court has determined that, in the context of a *Pitchess* motion, meaningful appellate review can be accomplished by examining the sealed transcript of the trial court's in camera review proceedings. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) Having reviewed the sealed transcript, we find the trial court fulfilled its duties under *Pitchess* by making a record of the documents it examined and explaining the basis for its decision to disclose only some of them. (See *People v. Mooc*, *supra*, 26 Cal.4th at p. 1229 [in ruling on *Pitchess* motion, the trial court should make a record of the documents it examined by describing them on the record]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 462 [same].) We find no ground to disturb the court's *Pitchess* ruling.

II. *Jury Instruction on Propensity Evidence*

Over defense objections based on "due process, equal protection [and] minimiz[ing] the burden of proof," the trial court instructed the jury with CALCRIM No. 1191B, which informed the jury it could consider charged sex offenses to find appellant had the propensity to commit other charged sex crimes. Specifically, the court instructed:

"The People presented evidence that the defendant committed the crimes of sexual intercourse with a child ten years or younger in counts 1, 2, 3, and 4, and lewd act upon a child under 14 in counts 5, 6, 7, 8, 9, 10 [and] 11. If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may[,] but are not required to[,] conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit and did commit the other sexual offenses charged in this case.

"If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not

8

sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

After the court instructed the jury, defense counsel asked the court to strike the "and did commit" phrase, which counsel characterized as "non-mandatory language." Counsel acknowledged there had been no earlier request for the court to strike the language, but argued it was "permissive language" that "reduces the burden of proof and it is confusing." The court reviewed the bench notes for the "and did commit" language and a referenced appellate case and denied counsel's request.

Citing *People v. Stanley* (1967) 67 Cal.2d 812 (*Stanley*) and *People v. Scott* (1978) 21 Cal.3d 284 (*Scott*), appellant contends that as given, CALCRIM No. 1191B lowered the prosecution's burden of proof because it effectively permitted the victim to corroborate her own accusations. (See *Stanley*, *supra*, 67 Cal.2d at p. 819 [victim's "testimony as to the other offenses, which was not corroborated by any other evidence, in no way strengthened his testimony as to the offenses charged"]; *Scott*, *supra*, 21 Cal.3d at p. 297 ["Where the sole evidence of uncharged sexual conduct is the uncorroborated testimony of the prosecutrix herself, it is inadmissible since it contributes nothing to a determination of her credibility on the charged offenses and is highly prejudicial"].) We disagree. *Stanley* and *Scott* are inapposite because, as appellant acknowledges, they predate Evidence Code section 1108. (Added by Stats. 1995, ch. 439, § 2, p. 3429.) "Prior to the enactment of [Evidence Code] section 1108, evidence of the defendant's disposition to commit a sex offense was generally excluded. [Citation.] After the enactment of [Evidence Code] section 1108, courts can no longer exclude such evidence as prejudicial per se, but must engage in a weighing process under [Evidence Code] section 352. [Citation.]" (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 501-502.) Appellant's corroboration argument thus was rejected by the Legislature when it enacted Evidence Code section 1108. (Cf. *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404 ["Given the significant probative value of uncharged sexual misconduct in sex crimes

9

cases, we find evidence of such can be used to *corroborate* a victim's allegation of sexual abuse . . . ." , italics added].)

Rather than *Stanley* and *Scott*, the instructive case on the challenged instruction is the Supreme Court's subsequent case in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*). There, the high court found no instructional error where the trial court gave a substantially similar instruction. That instruction provided: "'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the [400] instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to *and did commit* the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge." (*Id*. at p. 1167, italics added, fn. omitted.)

Our Supreme Court concluded that Evidence Code section 1108 permits a jury to consider both charged and uncharged offenses to infer propensity. (*Villatoro*, 54 Cal.4th at pp. 1163-1164.) The high court also rejected the argument that the instruction would permit "the jury to convict defendant of one count based simply on its guilty 'verdict' on any other counts." (*Id*. at p. 1165.) It explained: "It is not the verdict itself, but rather the jury's factual finding that defendant has committed a sex offense, that the jury relies on to draw an inference of disposition or propensity." (*Ibid.*)

10

In *People v. Meneses* (2019) 41 Cal.App.5th 63, this court applied *Villatoro* to reject the appellant's challenge to CALCRIM No. 1191B. The instruction given in that case also included the "and did commit" language. (*Menseses, supra*, at p. 67.) We find no reason to depart from our precedent in this case. Accordingly, we reject appellant's claim of instructional error.

III.     *CSAAS Evidence*

    A.    *Expert Testimony*

Appellant contends the trial court prejudicially erred in admitting expert testimony on CSAAS for several reasons. First, he argues CSAAS evidence should be excluded in its entirety because, due to the "amorphous and indefinite characteristics of CSAAS, the jury will invariably use the evidence against the defendant by corroborating the statement and/or testimony of the victim in favor of conviction." We disagree. "While CSAAS evidence is not relevant to prove the alleged sexual abuse occurred, it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*).) Aside from its relevance, the jury was specifically instructed that "Dr. Ward's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him." "We presume the jury understood and followed the court's instructions." (*People v. Jackson* (2016) 1 Cal.5th 269, 352.) Accordingly, there is no basis to conclude the jury would "invariably use the evidence against the defendant."

Appellant argues the CSAAS evidence is "neither relevant nor the proper subject of expert testimony as there are no longer misconceptions about how child sexual abuse victims should act." He provides no citation or evidence for his factual assertion that misconceptions about child sexual abuse are no longer present. "Moreover, even if we were to assume that all the empaneled jurors were fully aware of all five components

11

of CSAAS, we would then find Dr. [Ward's] testimony to be merely cumulative and therefore not prejudicial." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173.)

Appellant claims that the CSAAS evidence should be excluded because it "constituted scientific opinion evidence without reliable foundation under *Kelly*/*Frye*." We disagree because "expert CSAAS testimony is not . . . subject to the *Kelly* rule." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173.)

Finally, appellant contends the CSAAS evidence should have been excluded under Evidence Code section 352 as more prejudicial than probative. We disagree. The evidence was probative of the victim's credibility. No evidence suggested the jury would "invariably" use the evidence against appellant. Finally, "the prejudicial impact of the relatively benign CSAAS testimony was likely to have paled in comparison to the charged conduct." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 174.) Thus, we find no abuse of discretion in admitting the CSAAS evidence.

B.      *Jury Instruction*

The trial court instructed the jury on the CSAAS evidence with CALCRIM No. 1193 as follows:

"You have heard testimony from Dr. Ward regarding child sexual abuse accommodation syndrome. Dr. Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [the victim's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

Counsel requested two paragraphs be added to CALCRIM No. 1193 before the third sentence as follows:

"This testimony must not be considered by you as evidence that the alleged victim's claims are true.

12

"Child sexual abuse accommodation syndrome research is based upon an approach that is completely different from that which you must take in this case. The Child Sexual Abuse Accommodation Syndrome (CSAAS) approach was developed by a psychologist who treated victims of sexual molest. The CSAAS approach begins with the assumption that molestation has occurred. It is designed to describe and explain different potential reactions of children who have been victimized in such a manner." The court refused the requested modifications because it found them "somewhat confusing." Appellant contends the trial court erred because without two of the proposed paragraph additions, "the jury may have applied the CSAAS testimony in an incorrect and highly prejudicial manner." We disagree.

We have concluded previously that CALCRIM No. 1193 "accurately instructs the jury on the law: the proper use—and the proper limitations on the use—of CSAAS evidence." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 176.) "[T]he instruction does not: (a) improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony; (b) violate due process; or (c) misapply the burden of proof." (*Id.* at p. 175.)

The court did not err in refusing to give the requested modifications because they were duplicative and/or potentially confusing. (See *People v. Lopez* (2021) 73 Cal.App.5th 327, 336 [""'[A] trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [Citation], or if it is not supported by substantial evidence,'"" internal citation omitted].) The first paragraph merely restates the second sentence of the official instruction, which already provided that "Dr. Ward's testimony . . . is not evidence that the defendant committed any of the crimes charged against him."

The second requested paragraph is unnecessary and likely to confuse the jury. It is unnecessary because Dr. Ward already testified that CSAAS was developed by Dr. Summit who was treating victims of sexual molestation. It is likely to confuse the jury because it suggests that CSAAS evidence should not be considered due to the

13

"completely different" "approach" used to develop CSAAS despite numerous cases finding CSAAS admissible and probative in cases with fact patterns similar to this case, such as *Lapenias*. Accordingly, we find no instructional error.

IV.    *Sentencing*

A.    *Cruel and/or Unusual Punishment*

Appellant contends his 100-years-to-life sentence constitutes cruel and/or unusual punishment under the state and federal constitutions. We disagree.

"A punishment violates the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' [Citation.] A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230-1231.)

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.) In *Rummel*, the United States Supreme Court held a life sentence for credit card fraud of $80, passing a $28.36 forged check, and obtaining $120.75 by false pretenses was not grossly disproportionate in violation of the Eighth Amendment. (*Id.* at pp. 265-266.) In *Lockyer v. Andrade* (2003) 538 U.S. 63, the high court upheld two consecutive 25-years-to-life sentences imposed for stealing videotapes worth less than $200 (*id.* at pp. 66, 70-77). Similarly, a 25-years-to-life sentence for stealing three golf clubs was not grossly disproportionate. (*Ewing v. California* (2003) 538 U.S. 11, 28-31.) Given that the United States Supreme Court upheld life sentences for less serious property crimes, it follows that appellant's sentence for multiple sex crimes against a very young, "particularly vulnerable" victim over the course of many years does not violate the federal constitution.

14

To determine whether a sentence is unconstitutionally disproportionate under the California Constitution, we apply a three-pronged approach. (*People v. Romero* (2002) 99 Cal.App.4th, 1418, 1431.) We (1) examine "'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society,'" (2) "compare the challenged punishment with punishments prescribed for more serious crimes in our jurisdiction," and (3) "compare the challenged punishment to punishments for the same offense in other jurisdictions." (*People v. Johnson* (2010) 183 Cal.App.4th 253, 296-297.) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.) Moreover, "'great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses.'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 729 (*Baker*).) "It is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or nonsex offenses." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 502 [mandatory 15 years to life for oral copulation in violation of section 288.7, subdivision (b) is not cruel and/or unusual punishment]**.**)

As to the first factor, "[a] look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts. A look at the nature of the offender includes an inquiry into whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'" (*People v. Thongvilay* (1998) 62 Cal.App.4th 71, 88.) Here, appellant committed the crime of sexual intercourse or sodomy with a child under the age of 10 and continued committing sex crimes against the victim until she was 13. In discussing less heinous sex acts against minors, this court has stated that "lewd conduct on a child may not be the most grave of

15

all offenses, but its seriousness is considerable.  It may have lifelong consequences to the well-being of the child."  (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806 (*Christensen*); cf. *People v. Olsen* (1984) 36 Cal.3d 638, 646, 646 ["There exists a strong public policy to protect children of tender years."]; *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244 ["sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"].)  The victim was particularly vulnerable given her age and lack of any parental or other "protection whatsoever."  (Cal. Rules of Court, rule 4.421(a)(3); *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 [victim's vulnerability and defendant's abuse of trust were aggravating factors for the offense of forcible lewd acts on a child under 14].)

As to the nature of the offender, appellant was an adult who sexually assaulted and abused someone who was, or who he at least considered, his own daughter. He argues he had the ability to rehabilitate based on his Static-99R score, but acknowledges that his Static-99R score indicates an "average" risk of reoffending. Considering all these factors, we conclude appellant has not established disproportionality based on the nature of the offense or the offender.

With respect to the second factor – comparing his sentence with punishments for more serious crimes in our jurisdiction – appellant notes that only first degree murder is punished with a 25-years-to-life term.  Section 190, subdivision (a), sets forth three alternative punishments for first degree murder, including death, imprisonment without the possibility of parole, or imprisonment for a term of 25 years to life.  The more serious punishments of death and imprisonment for life without the possibility of parole are proper if the defendant "has been convicted of more than one offense of murder in the first or second degree." (§ 190.2, subd. (a)(3).)  Thus, the punishment on two counts of first degree murder could well be more severe than the punishment appellant received.  (See *Christensen*, *supra*, 229 Cal.App.4th at p. 808.)

16

As to the third factor – comparing the challenged punishment to punishments for the same offense in other jurisdictions – appellant did not provide any information on the punishment in other jurisdictions for the offense of sexual intercourse or sodomy on a child under 10 years of age. For example, he cites Mississippi statutes, which punish sexual penetration of a child under 14 with a sentence 20 years to life, and Oregon statutes, which punish oral penetration of a child under the age of 12 with a maximum term of 20 years. But as our Legislature has determined, committing a sex crime on a child under age of 10 is different from committing the same offense on a child under the age of 12 or 14. (Cf. § 286 (c)(1) ["sodomy with another person who is under 14 years of age and more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years"] with § 288.7, subd. (a) ["sodomy with a child who is 10 years of age or younger . . . shall be punished by imprisonment in the state prison for a term of 25 years to life"].) Accordingly, because appellant failed to compare his sentence "with punishments in other states for the same offense, . . . we take [the failure] as a concession that his sentence withstands a constitutional challenge on either basis." (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)[4]

Finally, appellant asserts his punishment violates his right to be free from cruel or unusual punishment because it exceeds the human lifespan. He cites Justice Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, 600-602, which states that a prison term that is impossible to serve furthers no rational purpose and violates federal and state guarantees against cruel and/or unusual punishment. However,

---

[4] We note several other states punish sex crimes against young children with 25-years-to-life or longer terms. (See *Baker*, *supra*, 20 Cal.App.5th at p. 731 [listing states including Kansas [25-years-to-life for fondling or touching of a child under 14]; Michigan [25-years-to-life for sexual penetration of a child under 13]; Rhode Island [25-years-to-life for sexual penetration of a child under 14]; South Carolina [25-years-to-life for oral copulation of a child under 11]; and Utah [25-years-to-life for oral copulation of a child under the age of 14]].)

17

as stated in *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383, "'no opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.]' [Citations.]  Because no other justice on our Supreme Court joined in Justice Mosk's concurring opinion, it has no precedential value."  Moreover, a sentence that a defendant cannot serve in his lifetime "serves valid penological purposes: it unmistakably reflects society's condemnation of defendant's conduct and it provides a strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*Ibid.*)  Simply put, it was appellant's "conduct, not his sentence, that was cruel and unusual." (*People v. Wallace* (1993) 14 Cal.App.4th 651, 666 [283 years, 8 month sentence for multiple sex crimes was constitutional].)  Accordingly, we conclude appellant's punishment is neither cruel nor unusual.

B.    *Upper Term on Count 5*

Effective January 1, 2022, Senate Bill No. 567 amended section 1170 by making the middle term the presumptive sentence "unless there are circumstances in aggravation or mitigation of the crime." (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731.) (Senate Bill 567)  "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Pen. Code, § 1170, subd. (b)(2).)

On February 25, 2022, the trial court sentenced appellant to the upper term on count 5 based on its finding that the victim was particularly vulnerable.  There was no objection.  Appellant now contends the sentence was an unauthorized sentence because the aggravating factor the court relied on was not stipulated by him or found true by a jury beyond a reasonable doubt in violation of Senate Bill 567.  Due to the recent enactment of Senate Bill 567, whether a failure to object forfeits a claim of sentencing

18

error under the statute is currently under review by our Supreme Court. (See, e.g., *People v. Anderson* (2023) 88 Cal.App.5th 233, 242 [defendant's failure to object forfeited claim the trial court erred by imposing the upper term under amended § 1170 ], review granted April 19, 2023, S278786.) We need not decide the forfeiture issue because even if not forfeited, the sentencing error was harmless.

There is a split of authority on what prejudice standard applies on appeal when determining whether a case should be remanded for resentencing in light of Senate Bill 567. The issue is pending in our high court. (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.) The majority of courts hold that if a sentencing court relies on an express aggravating factor to impose an upper term, any sentencing error is harmless where the reviewing court concludes a jury would find that aggravating circumstance true beyond a reasonable doubt. (See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495, 500 [sentencing error is harmless "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury"]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465-466 ["In order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by Lopez was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied* . . ."].) However, in the recent case of *People v. Lewis* (2023) 88 Cal.App.5th 1125, review granted May 17, 2023, S279147, the appellate court held it is not sufficient to conclude a jury would have found at least one aggravating circumstance true beyond a reasonable doubt to find harmless error. The reviewing court also would have to find "the record *clearly indicates* that the trial court would have imposed the same sentence under the new law." (*Id*. at p. 1138.)

In this case, the trial court imposed an upper term based on the aggravating circumstance that the victim was particularly vulnerable. "As used in the context of rule [4.]421(a)(3), a 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases.'" (*People v. Bloom* (1983) 142 Cal.App.3d 310, 321, quoting *People v. Smith* (1979) 94 Cal.App.3d 433, 436.) Some "clear-cut" examples include being "elderly, very young, or disabled." (*People v. Sandoval* (2007) 41 Cal.4th 825, 842.) Here, count 5 was based on appellant's lewd act(s) when the victim was 11 years old. However, the victim was 8 years old when appellant began his sexual abuse. Over the following years he continued to commit sex crimes against the victim. He threatened her to remain silent or her family would fall apart and her younger sister would be victimized. The victim's mother also was complicit in the crimes during this period, and the victim lacked a meaningful relationship with her mother's husband. On this record, we conclude a jury would have found beyond a reasonable doubt, as the trial court did, that the victim "had no protection whatsoever and was particularly vulnerable."

Additionally, the record clearly indicates the trial court would have imposed the same sentence if it was aware of its sentencing discretion under Senate Bill 567. When considering aggravating and mitigating factors, the court concluded the aggravating circumstance that the victim was particularly vulnerable "outweighs any other factor." Accordingly, the court's error in imposing the upper term on count 5 was harmless.

C.     *Abstracts of Judgment*

The trial court sentenced appellant to a total indeterminate term of 100 years to life and a determinate term of 20 years. The sentence is reflected in two abstracts of judgment, one for the determinate portion of the sentence and one for the indeterminate portion. The abstract of judgment for the determinate portion of the sentence references the indeterminate sentence, but does not expressly state the terms are

20

to run concurrently.  Appellant requested we order the abstract of judgment amended to state that the determinate term was to be served concurrently.  However, the abstract of judgment for the indeterminate portion of the sentence correctly reflects the oral pronouncement of sentence.  It states: "Total term in state prison is 100 years to life.  Defendant is sentenced to a determinate sentence of 20 years which is concurrent to his indeterminate sentence of 100 years to life."  On this record, there is no need to amend the abstracts of judgment.

## DISPOSITION

The judgment is affirmed.

DELANEY, J.

WE CONCUR:

GOETHALS, ACTING P. J.

GOODING, J.

21